| | | |
|---|---|---|
| TIBERIU KLEIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7177 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DAVID A. NOVOSELSKY, | ) | |
| GREYHOUND LINES, INC., and | ) | |
| MB FINANCIAL BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2002, Claudia Zvunca was tragically struck and killed by a Greyhound bus. *Klein v. O'Brien*, 884 F.3d 754, 755 (7th Cir. 2018). Claudia's daughter, Cristina Zvunca, witnessed the accident. *Id.* She was seven years old at the time. *Id.* Since then, Claudia's husband (and Cristina's stepfather), Tiberiu Klein, has plagued various federal and state courts with attempts to manage the tort litigation related to Claudia's death. *Id.* at 756. This federal lawsuit is just one installment in the sixteen-year litigious crusade carried out by Klein and his associates. This time, Klein dresses up his allegations as a series of conspiracy theories involving Klein's erstwhile attorney David Novoselsky, Greyhound Lines, MB Financial Bank, and a handful of Cook County and Illinois Appellate Court judges. *See generally* R. 51, Am. Compl. But the window dressing does not matter: Klein's claims in this case all fail on the merits for one reason or another. Because Klein has already had substantial

leeway to amend his complaint and to bend and break pleading rules,[1] the case is dismissed with prejudice.

## I. Background

## A. Procedural History

The byzantine procedural history of the disputes arising out of the fatal tragedy has already been discussed at length in other opinions. *See, e.g.*, *Klein v. O'Brien*, 2017 WL 3263711, at *1-3 (N.D. Ill. Aug. 1, 2017); *Klein v. Motor Coach Indus., Inc.*, 2017 WL 2834615, at *1-4 (Ill. App. Ct. June 28, 2017);[2] *Cushing v. Greyhound Lines, Inc.*, 965 N.E.2d 1215, 1218-1230 (Ill. App. Ct. 2012) ("*Cushing I*"). Without the procedural background provided by those opinions, Klein's Amended Complaint is nearly incomprehensible, so it is worth summarizing the procedural history before diving into the allegations in this case. But to avoid excessively retreading the same ground, only the most pertinent events will be set forth here.[3]

---

[1]Despite a warning from that Klein must keep his complaint as concise as practicable, *see* R. 44, 12/08/17 Minute Entry, the Amended Complaint comprises 378 numbered paragraphs, plus 144 paragraphs of factual allegations and hundreds of pages of exhibits incorporated by reference. *See, e.g.*, Am. Compl. ¶ 16. The Amended Complaint also fails to confine each paragraph to "a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

[2]*Klein v. Motor Coach Industries* is an unpublished order and generally cannot be cited as precedent under Illinois Supreme Court Rule 23. But unpublished Illinois Appellate Court orders may be cited for issue-preclusion and claim-preclusion purposes, and the Court does so in this Opinion. *See* Ill. Sup. Ct. R. 23(e)(1) (unpublished orders may be cited by parties to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case).

[3]The Court may take judicial notice of the issuance of numerous opinions related to this case. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) ("[I]n resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record.").

### 1. The Colorado Litigation

In 2002, Klein (purporting to act as the executor of his late wife's estate) filed a wrongful death action against Greyhound and the bus driver in Illinois state court. *Klein v. O'Brien*, 2017 WL 3263711, at *1. Greyhound removed the case to federal court, and it was transferred to the District of Colorado on *forum non conveniens* grounds. *Id*. Klein pursued the Colorado action for twelve years. *See id*. at *1-2. The District of Colorado finally dismissed the case in 2014, holding that Klein had no authority to pursue the case under the Illinois Wrongful Death Act. R. 60, MB Financial Br. Exh. A, Order of Dismissal, Case No. 02-cv-01827 (D. Col. May 30, 2014). After the Colorado case was dismissed, Klein tried to file a new wrongful death action in Illinois "pursuant to the Colorado Wrongful Death Act," but the Illinois Appellate Court rejected the attempt, holding that Illinois law only permits one wrongful death action. *Klein v. Motor Coach Indus., Inc.*, 2017 WL 2834615, at *3-4, *6-7.

### 2. The Illinois Litigation

While litigation in Colorado was ongoing, Klein and his affiliates filed a host of lawsuits in the Circuit Court of Cook County and in Cook County Probate Court. *Klein v. O'Brien*, 2017 WL 3263711, at *1-2. Klein made various efforts to obtain control over his late wife's estate, including having a paralegal named as the administrator (the paralegal worked at the law firm that Klein had retained at the time). *Id*.; *In re Estate of Claudia Zvunca*, 2017 WL 1040216, at *2 (Ill. App. Ct. Mar. 15, 2017). In 2013, Klein briefly succeeded in his efforts to be named as administrator

of Claudia's estate, but he was soon removed in favor of Claudia's daughter, Cristina Zvunca. *Estate of Zvunca*, 2017 WL 1040216, at *2.

Some of Klein's other Illinois litigation efforts were directed at attempting to obtain guardianship of Cristina and control over Cristina's estate. *See Estate of Zvunca*, 2017 WL 1040216, at *2; *Cushing I*, 965 N.E.2d at 1222-1226. Klein was assisted in those efforts by attorney David Novoselsky, but at some point, the two fell out, and Novoselsky (allegedly) began to work against Klein's interests. *See Cushing I*, 965 N.E.2d at 1223; *see also* Am. Compl. ¶¶ 43-44.[4] Before the relationship soured, however, Klein did succeed in becoming Cristina's plenary guardian. *Cushing I*, 965 N.E.2d at 1222; *Cushing v. Greyhound Lines, Inc.*, 991 N.E.2d 28, 46 (Ill. App. Ct. 2013) ("*Cushing II*"). Klein was apparently never formally removed as plenary guardian, but in 2009, an Illinois judge appointed MB Financial Bank as guardian of Cristina's estate.[5] *Cushing II*, 991 N.E.2d at 65, 67, 69-70. Klein was also barred from further participation in the Illinois action, apparently in response to concerns about Klein's conflicts of interest with Cristina. *Id*. at 64-65. Klein sought to vacate those orders, but was denied. *Id*. at 68-69.

In 2009, Novoselsky filed a lawsuit accusing the attorney for Claudia's estate, Jeanine Stevens, of abusing Cristina, and the administrator of Claudia's estate, John

---

[4]At various points in the litigation, Novoselsky either represented or purported to represent Klein, Cristina, Cristina's estate, Cristina's grandparents, and MB Financial Bank—despite the apparent adversity of some of those parties' interests. *See Cushing I*, 965 N.E.2d at 1223-1225; *Cushing II*, 991 N.E.2d at 46-47, 62, 85.

[5]The order initially appointed a different guardian to replace Klein, but it was not clear whether that guardian was ever informed of the appointment, and MB Financial was assigned the role. *Cushing II*, 991 N.E.2d at 67.

Cushing, of malpractice. *See* R. 1, Orig. Compl. Exh. 5, 04/08/14 Order, Case No. 09 L 6397, at 1-7; *Cushing II*, 991 N.E.2d at 62. In the various iterations of the complaint, Novoselsky purported to represent Klein (as Cristina's plenary guardian), Cristina's estate, and MB Financial Bank (as guardian of Cristina's estate). 04/08/14 Order, Case No. 09 L 6397, at 1. It is not clear whether Klein authorized the lawsuit (Klein alleges that he did not). Am. Compl. ¶ 63. An Illinois judge eventually found that Novoselsky filed the lawsuit without sufficient investigation into its factual basis and for the improper purpose of manufacturing a conflict between Stevens and Cushing and the beneficiaries of Claudia's estate. *See* 04/08/14 Order, Case No. 09 L 6397, at 13, 19. Novoselsky's apparent goal was to disqualify Stevens and Cushing from the lawsuit. *Id*. at 13.

In 2010, Greyhound and MB Financial settled the Illinois action for $2,090,000. *Cushing II*, 991 N.E.2d at 75. The trial court approved the settlement, which allocated $52,000 to Klein as damages for Claudia's wrongful death. *Id*. at 76. The settlement was preceded by a series of orders from the trial court preventing Cushing, the administrator of Claudia's estate, from directing the litigation. *Cushing II*, 991 N.E.2d at 71. The upshot was that Cushing, the estate's administrator, was not involved in the settlement negotiations, and did not agree to the settlement. *See id*. at 87-90. Cushing appealed the approval of the settlement.[6] *Id*. at 77-78. Sure enough, the appellate court rejected the settlement agreement on the grounds that Cushing was the proper representative of Claudia's estate, and the trial court had no

---

[6]Klein also tried to appeal, but the appellate court decided that he had no standing, and granted his motion to withdraw from the appeal. *Cushing II*, 991 N.E.2d at 76.

authority to approve a settlement where Claudia's estate was not part of the agreement. *Id*. at 92.

In April 2016, Cristina and her lawyers negotiated a settlement in the Illinois wrongful death action. *Klein v. O'Brien*, 2017 WL 3263711, at *2. Klein was unhappy with the settlement and tried unsuccessfully to challenge it in federal court. *Id*. at *3-5 (N.D. Ill. 2017).

### 3. Northern District of Illinois Litigation

Klein and his associates have filed at least four separate lawsuits in the Northern District of Illinois challenging various aspects of the wrongful death litigation.[7] The first federal lawsuit that is important to this case[8] was filed in 2014, Case No. 14-cv-2609. The factual allegations in the 2014 case covered much the same territory as the factual allegations in this case, but the plaintiffs were (officially)[9] Claudia Zvunca's estate (represented by Cristina Zvunca as administrator) and Cristina Zvunca. MB Financial Br. Exh. D, Complaint, Case No. 14-cv-2609. That case was voluntarily dismissed with prejudice within the year. MB Financial Br. Exh. E, 09/17/14 Minute Entry, Case No. 14-cv-2609.

---

[7]In addition to these lawsuits, in 2010, Novoselsky (purporting to represent MB Financial Bank) also attempted to remove one of the cases in Illinois state court to the Northern District of Illinois, but the case was quickly remanded and Novoselsky was sanctioned for the wrongful removal. *MB Financial, N.A. v. Stevens*, 2011WL 5514059, at *1, *5 (N.D. Ill. July 5, 2011). The Seventh Circuit upheld the fee award. *MB Financial, N.A. v. Stevens*, 678 F.3d 497, 500 (7th Cir. 2012).

[8]Cristina and her grandparents (or perhaps Novoselsky purporting to act on their behalf) filed at least one other lawsuit, Case No. 08-cv-4507, but no party contends that that lawsuit affects the issues in this case.

[9]Although Klein was not named as a plaintiff, Klein's attorney, John Xydakis, represented both plaintiffs.

The next case of interest was filed in 2016 before Judge Leinenweber, Case No. 16-cv-11008. The plaintiffs were Klein and, oddly, his attorney John Xydakis. The case alleged a conspiracy among various defendants—including Greyhound and Cristina, but not including Novoselsky or MB Financial—to foil Klein's efforts to recover in the wrongful death case. R. 62, Greyhound Br. Exh. E, Am. Compl., Case No. 16-cv-11008. Judge Leinenweber dismissed the lawsuit. *Klein v. O'Brien*, 2017 WL 3263711, at *9. The Seventh Circuit upheld the dismissal, and chastised Klein and Xydakis for causing "havoc in the tort litigation." *Klein v. O'Brien*, 884 F.3d at 757-58.

## B. Allegations in this Case

For the purposes of a motion to dismiss, the Court accepts the factual allegations in the complaint as true (though only *factual* allegations get this treatment, not bare *conclusions*). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Amended Complaint covers the ground explained above, though with a different spin. Klein's overall claim is that Greyhound concocted a scheme to discriminate against various players in the Illinois litigation on the basis of their gender and perceived sexual orientation, with the ultimate goal of depriving Klein of recovery in his Colorado lawsuit and the fees he might have obtained as Cristina's guardian or as the administrator of Claudia's estate. Am. Compl. ¶ 1. The basic shape of the scheme was for Greyhound (allegedly assisted by Novoselsky and MB Financial) to accuse attorney Jeanine Stevens of sexually abusing Cristina. *See id*. ¶¶ 19, 37-38. The allegations of sexual abuse were designed to derail the wrongful death lawsuit by

removing Stevens and getting Cristina's grandparents to drop the lawsuit. *See id.* ¶¶ 44-52. The desired result was to settle Klein's Colorado claims for an unfairly low amount. *Id.* ¶ 44.

Klein alleges that Greyhound (again with help from Novoselsky and MB Financial) recruited several Cook County Court judges into the conspiracy. *See id.* ¶¶ 42, 58-62, 81-85. When the case was before Judge Zwick, who proved unfriendly to Greyhound's goals, Greyhound plotted to remove Zwick from the case by making unfounded accusations that Zwick was a member of "a group of lesbians who protects Stevens." *Id.* ¶ 60. Although that was allegedly the plan, it is not clear from the Amended Complaint whether anyone actually accused Zwick of covering up Stevens's supposed child abuse, or whether Zwick was removed by other means. *See id.* ¶¶ 60-68.

Greyhound and Novoselsky repeatedly tried to recruit Klein into the scheme to discredit Stevens and Zwick, but were allegedly rebuffed. *Id.* ¶¶ 25-28, 47-49, 57-61. When Klein made the courts aware of the Greyhound plot, Greyhound and the other defendants supposedly retaliated against him by getting judges to enter adverse rulings, including purportedly settling Klein's Colorado litigation for an unfairly low amount. *See id.* ¶¶ 75, 85.

In addition to these allegations, Klein alleges that Greyhound and Novoselsky entered into a separate "conspiracy plan" with Cristina Zvunca and her grandparents to deprive Klein of a fair recovery. Am. Compl. ¶ 190. That plan involved Cristina stealing letters from Claudia to Klein that would have helped Klein demonstrate his

damages from the loss of his wife's companionship. *See id.* ¶¶ 195-198. With the letters hidden, Cristina was able to claim that Claudia would have divorced Klein, thereby lessening Klein's damages and increasing Cristina's share of the recovery from Claudia's death. *Id.* ¶¶ 199-200.

Based on this convoluted series of alleged events, Klein asserts 24 separate claims against MB Financial, Novoselsky, Greyhound, Cristina and her grandparents, and the allegedly corrupt judges. The judges, Cristina, and Cristina's grandparents have all been dropped from the case, so the only remaining defendants are MB Financial, Greyhound, and Novoselsky.[10]

---

[10]Klein has made countless attempts to file unauthorized supplemental motions and briefs making additional arguments and factual claims, as well as asserting substantial new factual material in his response brief. *See* R. 78, Pl. Resp.; *see also, e.g.*, R. 79 (Klein's attempt to file a "supplement" to his response brief, which was actually an attempt to assert additional arguments and facts in excess of the allowed page limits for briefs); R. 110 (Klein's motion for leave to file a Second Amended Complaint); R. 113 (Klein's "Motion for Partial Summary Judgment"); R. 128 (Klein's motion to take judicial notice of certiorari petition, with the petition appended); R. 133 (Klein's "Motion For Leave to File or Serve Supplemental Pleading"); R. 136 (Klein's motion to take judicial notice of Xydakis's certiorari petition); R. 137 ("Supplement to Motion for Leave to File Supplemental Pleadings," comprising over 60 pages of new legal arguments and supporting exhibits). Many of those motions were filed *after* the Court warned Klein that the motions to dismiss were considered fully briefed, and that there was presumptively no need for further motion practice. R. 120, 07/11/18 Minute Entry; *see also* R. 130, 07/18/18 Minute Entry (noting that, at the time of the docket entry, Klein had filed at least six meritless or unnecessary motions since he filed his response to the dismissal motions).

To the extent that those motions are unauthorized attempts to amend or supplement the factual allegations in the Amended Complaint, or improper attempts to add arguments beyond those made in the response brief, the Court disregards those motions. It is not practical or feasible for the Court and the defendants to be saddled with ever-changing factual allegations and legal arguments; that is why litigants are held to the allegations in their pleadings and the arguments in their briefs. Klein, too, must be held to the facts he has alleged in his Amended Complaint and the legal arguments made in the one response brief he was permitted (which is already 17 single-spaced pages, well in excess of the general page limit for briefs, *see* Local Rule 7.1).

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up) (alteration in original).[11] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[11]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. The Seventh Circuit Opinion

As an initial matter, it is not clear whether this Court should be entertaining Klein's lawsuit at all. In March 2018, when the briefing for the motions to dismiss in this case was ongoing, the Seventh Circuit issued its opinion in *Klein v. O'Brien*, 884 F.3d 754 (7th Cir. 2018). The opinion upheld the dismissal of Klein's claims in the 2016 federal lawsuit and, just as importantly, warned Klein that he has reached "the end of the line in federal court." *Id.* at 757. The Seventh Circuit explained that Klein was "not entitled to divert the time of federal judges … from the needs of more deserving litigants," and advised Klein that "[a]ny further federal litigation related to the 2002 accident, and the state suits to which it gave rise, will be penalized." *Id.* In light of those statements, the proper step might be to dismiss this lawsuit immediately without in-depth analysis.

But it is not crystal clear that summary dismissal is the proper approach. First, this case was filed well before the Seventh Circuit opinion issued, and it is not obvious whether that opinion meant to dispose of existing lawsuits. *See id.* ("Any *further* federal litigation … will be penalized.") (emphasis added). Nor did the Seventh Circuit take formal steps to shut down already-pending cases. Finally, although the Court was wary of imposing yet more costs on the defendants to this lawsuit, the lion's share of the work of the briefing was complete by the time the Seventh Circuit issued its opinion. All that remained was to file reply briefs. On balance, and out of an abundance of caution, the Court elected to proceed with the briefing schedule and

to address Klein's claims on their merits. Of course, if the Court misinterpreted the admonition, then the Seventh Circuit no doubt will make that clear during the almost-certain appeal that Klein will file after the dismissal of this case.

## B. Claim and Issue Preclusion

### 1. The 2014 Federal Lawsuit

The defendants argue that Klein's claims are barred by claim preclusion because they were raised or could have been raised in the 2014 federal lawsuit. *See* R. 60, MB Financial Br. at 5-6; R. 62, Greyhound Br. at 6-7; R. 65, Novoselsky Mot. Dismiss ¶ 1 (adopting Greyhound's arguments). But Klein was not a party to the 2014 case, and so is not bound by its results unless he was in privity with one of the parties to the case. *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 588-89 (Ill. App. Ct. 2009). One category of relationships that may establish privity are relationships that are "explicitly representative," such as the relationship between the "trustee of an estate or interest of which the nonparty is a beneficiary" and the beneficiary. *Id.* (quoting Restatement (Second) of Judgments §§ 41, 75(1) & Comment a (1982)). But the privity rule is based on the premise that the representative will protect the nonparty's interest, so if there was inadequate representation in the prior action, the party represented in that action will not be bound. *Id.* at 590-91. In determining privity, the identity of *interests* controls, not the nominal identity of the party. *Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 826 (Ill. 1992).

Unfortunately, none of the parties has developed an argument as to *why* the Court should hold that Klein is in privity with the plaintiffs in the 2014 federal case for purposes of claim preclusion. Instead, Greyhound and MB Financial simply assert that Klein is in privity with Claudia's estate because he is a beneficiary of the estate, citing a case from the Eastern District of Wisconsin. *See McCrocklin v. Fowler*, 285 F.Supp. 41, 43 (E.D. Wis. 1968). But that case does not explain why Klein should be considered to be in privity with the estate under *Illinois* law—especially because Klein is asserting, in the present case, that Cristina and other estate administrators did *not* adequately represent his interests (and in fact, that Cristina actively colluded with Greyhound to sabotage Klein's case).[12] Of course, it might be that at least some of Klein's interests were represented in the 2014 federal case. For one thing, Klein's sometime-attorney, John Xydakis, was counsel of record in that case, and Xydakis later represented Klein in the 2016 federal lawsuit. For another, Klein himself purported to adopt the allegations from the 2014 complaint into his Amended Complaint in this case. Am. Compl. ¶ 16. But none of the defendants has developed this argument, so it is not clear at this stage that Klein is in privity with the parties to the 2014 lawsuit, and the Court cannot say that Klein is bound by its results. In any event, it is unnecessary for the Court to definitively decide the issue, because Klein's claims are subject to dismissal on other grounds.

---

[12]The Illinois Appellate Court has noted Klein and Cristina's potentially divergent interests in the wrongful death lawsuit, despite their shared interest in obtaining as large a judgment as possible. *Cushing II*, 991 N.E.2d at 38-39 (citing *Marshall v. Motor Coach Indus. Int'l, Inc.*, 904 N.E.2d 1238 (Ill. App. Ct. 2005) (unpublished order under Supreme Court Rule 23)); *Klein v. Greyhound Lines, Inc.*, 2013 WL 3971717, at *3 (Ill. App. Ct. Aug. 1, 2013) (same).

What's more, even if Klein's status as a beneficiary of Claudia's estate did establish privity for *some* of his claims, it is simply not accurate that "all of Klein's claimed damages [in this case] arise from the fact that he is a purported beneficiary of Claudia's Estate." *See* MB Financial Br. at 4. For example, Klein's claims about lost opportunity to profit from guardianship of Cristina and loss of administrator fees for Claudia's estate do not necessarily flow from his status as a *beneficiary* of Claudia's estate. Nor do Klein's defamation claims against Novoselsky. So even if Klein is in privity with Claudia's estate, that would not necessarily dispose of all of Klein's claims.

## 2. The 2016 Federal Lawsuit

Although it is not clear that the 2014 federal lawsuit gives rise to claim preclusion against Klein, the 2016 federal lawsuit is a different matter. For claim preclusion to apply, there must be (1) a final judgment by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties and their privies. *State Farm*, 914 N.E.2d at 588. The point of claim preclusion is to minimize the expense and inconvenience of multiple lawsuits on the same topic. *Matrix IV, Inc. v. Am. Nat. Bank and Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011). To accomplish that, claim preclusion bars relitigation of all claims that could have been brought in a prior lawsuit, regardless of whether they were actually decided. *La Salle Nat. Bank v. Cty. Bd. of School Trustees of Du Page Cty.*, 337 N.E.2d 19, 22 (Ill. 1975). The requirement of identity of cause of action is satisfied if the

claims arise from the same set of facts. *Agolf, LLC v. Vill. of Arlington Heights*, 946 N.E.2d 1123, 1131 (Ill. App. Ct. 2011).

In the 2016 federal lawsuit, Klein (among other things) attacked the fairness of the 2016 settlement of the wrongful death action. *See Klein v. O'Brien*, 2017 WL 3263711, at \*4-5 (summarizing Klein's allegations). In that case, Klein alleged that various players in the Illinois litigation—including Greyhound—conspired to deprive Klein of his rights, which ultimately resulted in the allegedly unfair 2016 settlement. R. 62, Greyhound Br. Exh. E, Amended Complaint, Case No. 16-cv-11008 ¶¶ 7, 31, 36. To the extent that Klein is alleging malfeasance—in this case—by Greyhound in relation to the 2016 settlement, those claims are barred by claim preclusion. The parties (Klein and Greyhound) are the same, there was a final judgment on the merits in the 2016 case (which was later approved by the Seventh Circuit), and the claims arise out of the same facts (the alleged corruption and conspiracy surrounding the approval of the 2016 settlement).[13]

### 3. Entitlement to Pursue the Colorado Lawsuit

Klein's claims in this case are also narrowed by another preclusion doctrine. The doctrine of issue preclusion holds that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in

---

[13]It is likely that Klein would also be barred from attacking the validity of the 2016 settlement by the *Rooker-Feldman* doctrine. But the parties have not specifically pointed to where in the record are the pertinent Illinois court orders, so it is not completely clear at the pleading stage that the settlement was a final judgment for *Rooker-Feldman* purposes. *See Crestview Village Apartments v. United States Dept. of Housing and Urban Development*, 383 F.3d 552, 556 (7th Cir. 2004) (noting that state-court approval of a settlement agreement is a final judgment for *Rooker-Feldman* purposes).

subsequent suits based on a different cause of action involving a party to the prior litigation." *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 782 (7th Cir. 2017) (quoting *Carter v. Comm'r*, 746 F.3d 318, 321 (7th Cir. 2014)); *Matrix*, 649 F.3d at 547. "Unlike claim preclusion, issue preclusion can be invoked in unrelated claims and asserted by litigants who were not parties to the original lawsuit." *In re Diaz*, 580 B.R. 238, 242 (N.D. Ill. Sept. 19, 2017). For issue prelusion to apply, "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *Matrix*, 649 F.3d at 547 (quoting *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).

In this case, Klein is precluded from relitigating the issue of his entitlement to bring his own lawsuit separate from the administrator's wrongful death action in Illinois. Klein already litigated that issue in Cook County court and before the Illinois Appellate Court. The appellate court explicitly rejected Klein's theory, holding that only one wrongful death action could exist under Illinois law, and that the action could only be brought by the personal representative of the decedent's estate. *Klein v. Motor Coach Indus., Inc.*, 2017 WL 2834615, at *6. Klein was not the properly appointed administrator of Claudia's estate, so he was not entitled to bring any wrongful death action. *Id.* at *7. So any claim in this case that is premised on the

theory that Klein was entitled to pursue a separate wrongful death action is barred by issue preclusion.

## C. Civil Rights Claims

Moving on to the substance of the Amended Complaint, many of the claims against the three remaining defendants are brought under 42 U.S.C. § 1985(3). Section 1985(3) provides a civil cause of action for conspiracy to deprive someone of that person's right to equal protection of the laws. To state a claim under Section 1985(3), the plaintiff must allege a conspiracy with the purpose of depriving a class of persons of the equal protection of the laws. *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Conspiracies to discriminate based on sex can give rise to a Section 1985(3) claim. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1024 (7th Cir. 2000).

Klein does not allege that he himself is part of a protected group.[14] His theory of liability is that the defendants conspired to discriminate against Stevens and Zwick on the basis of gender and perceived sexual orientation,[15] and retaliated against Klein when he voiced opposition to the conspiracy. That is a reasonable legal theory, but

---

[14]Klein makes a passing reference to the fact that he is an "immigrant," *see* Am. Compl. ¶ 7, but does not pursue a theory of national origin discrimination in the body of his Amended Complaint or his brief.

[15]As far as the Court is aware, the Seventh Circuit has not decided whether a conspiracy to commit sexual-orientation discrimination can give rise to a claim under Section 1985(3). But it is likely that sexual orientation discrimination is just a variation of sex discrimination for Section 1985(3) purposes. *Cf. Hively v. Ivy Tech. Comm. College of Ind.*, 853 F.3d 339, 341 (7th Cir. 2017) (*en banc*) (holding, in the Title VII context, that "discrimination on the basis of sexual orientation is a form of sex discrimination"). In any event, other shortcomings in the pleadings make it unnecessary to decide the application of Section 1985 to sexual-orientation discrimination in this case.

the *facts* in the Amended Complaint do not plausibly state a claim under that theory. Section 1985(3) requires the "purpose" of the conspiracy to be the deprivation of equal rights. *See* 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire … *for the purpose* of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws … .") (emphasis added). In other words, the conspiracy must be motivated by discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.").

But Klein's own allegations make it abundantly clear that the purpose of the conspiracy he identifies was *not* to deprive Stevens or Zwick of their civil rights—it was to rig the wrongful death case. *See* Am. Compl. ¶¶ 1, 21. Klein himself says as much: "This case regards federal claims based on 42 USC 198(3) [arising] from a conspiracy scheme to violate [Klein's] equally protected rights and due process, when defendants retaliated in response to [Klein] exercising his 1st amendment rights in an attempt to stop a conspiracy to deprive others of their constitutional rights … *which in fact was a disguised form designed by defendants Greyhound and Novoselsky to achieve their personal economic goal of 'case fixing.'*" Am. Compl. ¶ 1 (emphasis added); *see also* ¶ 21 ("The goal of Greyhound conspiracy was to defraud the Illinois state court over the jurisdiction of the matter between Cristina and Greyhound, to

deny Stevens the merits and the interest in property carried by the potential economic benefits of her work in the case, and to deny Cristina the permanent litigation benefits and interest in property obtained so far."). In Klein's own words, the purpose of the conspiracy was case-fixing, not discrimination.

And, although Klein assigns the *conclusory* label of sex or sexual-orientation discrimination to the conspiracy, that label is contradicted by the *factual* allegations in the Amended Complaint, which demonstrate that the only goal of the alleged conspiracy was to promote the defendants' interests in winning the litigation. That is the only conclusion that makes sense given the facts alleged. Every action taken in the course of the years-long conspiracy—including the supposed "retaliation" against Klein—allegedly had the result of improving Greyhound's litigation position at Klein's expense. At the same time, it is not even clear from the allegations that the conspiracy even incidentally promoted discrimination based on sex or sexual orientation. The accusations that the conspirators allegedly made were that Stevens molested Cristina, and that Zwick helped to cover it up. *See* Am. Compl. ¶¶ 47-55, 60, 63. Child abuse is not inherently gendered or inherently tied to sexual orientation.

The closest Klein comes to alleging actual discriminatory animus is the allegation that Novoselsky used sexist and homophobic language when he was trying to get Klein to join the conspiracy. *See* Am. Compl. ¶¶ 47, 60; *see also id.* ¶ 1 (alleging that Novoselsky was suspended by the ARDC for gendered slurs directed at Stevens and Zwick). But that, on its own, does not establish that the purpose of the conspiracy—which, per Klein's allegations, lasted years and involved multiple

opposing parties to the wrongful death lawsuit, their attorneys, and several Cook County judges—was to discriminate against Zwick or Stevens on the basis of sex or sexual orientation. In sum, the factual allegations in the Amended Complaint are simply not enough to present a "story that holds together" when it comes to the sex-discrimination conspiracy. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Without any underlying well-pled allegation of class-based discrimination, the Section 1985(3) claim fails. *See Griffin*, 403 U.S. at 102.

### D. Claims Against MB Financial and Novoselsky: Counts 1, 2, 3, and 4

Next up are Klein's non-civil rights claims against MB Financial Bank (Counts 1, 2, and 4), and his related claim against Novoselsky (Count 3). As explained below, none of these claims survive dismissal.

### 1. Breach of Fiduciary Duty Against MB Financial (Count 1)

Count 1 is a claim that MB Financial breached its fiduciary duty to Klein. This claim is barred by the statute of limitations. Although the statute of limitations is an affirmative defense, dismissal at the pleadings stage under Rule 12(c) can be appropriate when the plaintiff's own allegations show that a claim is time-barred. *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012). Claims for breach of fiduciary duty are subject to Illinois's five-year catchall statute of limitations for civil actions "not otherwise provided for." *Armstrong v. Guigler*, 673 N.E.2d 290, 298 (Ill. 1996); *see also* 735 ILCS 5/13-205.

In this case, MB Financial's only conceivable fiduciary duty to Klein arose out of MB's status as the "special administrator" of Claudia's estate. Am. Compl. ¶ 119.

But the trial court's order appointing MB Financial as guardian of Claudia's estate was declared void on February 10, 2012.[16] *Cushing I*, 965 N.E.2d at 1237. So, as of February 10, 2012, MB Financial was no longer the administrator of the estate, and owed no fiduciary duty to Klein. *See PSL Realty Co. v. Granite Inv. Co.*, 427 N.E.2d 563, 569 (Ill. 1981) (holding that a judgment of the Illinois Appellate Court is final when entered). It is also clear that Klein knew about the supposed breach of fiduciary duty even before February 2012. Klein's main claim for breach of fiduciary duty is that MB Financial went against his interests by entering into the 2010 settlement agreement with Greyhound.[17] Am. Compl. ¶¶ 126-27. Klein clearly knew about MB Financial's alleged malfeasance before February 10, 2012, because he attempted to join in the appeal that invalidated MB's appointment as administrator. *Cushing I*, 965 N.E.2d at 1231. Klein filed this lawsuit on October 4, 2017, outside the five-year window. That means that Klein's claims against MB Financial for breach of fiduciary duty are time-barred.

---

[16]Klein alleges that MB Financial was the administrator of Claudia's estate "[a]t all relevant times" and also (perhaps contradictorily) that MB Financial "used this role until September 23, 2013." Am. Compl. ¶¶ 119-120. But that is not consistent with the public record, which shows that the Illinois Appellate Court declared that MB Financial was not properly appointed administrator on February 10, 2012. *Cushing I*, 965 N.E.2d at 1237; *see also Ennenga v. Starns*, 677 F.3d 766, 774-75 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

[17]Klein also makes some allegations about MB Financial's failure to "protect Klein's Colorado case." Am. Compl. ¶ 128. But, as explained above, Klein is precluded from arguing that he was entitled to pursue the Colorado case, and so could not prove any damages based on that theory. Klein's other allegations—that MB Financial "ignored emails from Klein," *id.* ¶ 129, for example—do not amount to breach of duty.

## 2. Interference with Prospective Economic Advantage (Count 2)

Next up is Klein's claim against MB Financial for interference with prospective economic advantage. According to Klein, MB Financial joined the conspiracy headed by Greyhound and Novoselsky and thereby caused Klein to lose out on the fees that Klein supposedly would have received by being the administrator of Claudia's estate and guardian of Cristina's estate. *See* Am. Compl. ¶¶ 140-145. But although Klein alleges general "financial interference" by MB Financial, he does not actually explain how MB Financial's actions caused him to lose out on the opportunities he identifies. *See id.* ¶ 147. The only thing connecting MB Financial's conduct to Klein's losses is Klein's allegation that MB joined in the general conspiracy scheme against Klein— an allegation that is too vague and conclusory to be entitled to the deference owed to factual allegations. For example, Klein asserts that MB Financial "maliciously planned with Novoselsky" to join the conspiracy scheme in exchange for the promise that Novoselsky would deposit the eventual wrongful-death settlement in MB's account and that Greyhound would become MB's client. Am. Compl. ¶¶ 77, 145. Klein also avers that MB Financial "ratified" Novoselsky's conduct. *Id.* ¶ 77. But those allegations just state the conclusion that MB Financial was involved in a conspiracy. They are not well-pleaded *facts* that would support a plausible inference that MB Financial actually was a conspirator. There are no allegations about how MB Financial "ratified" Novoselsky's actions, for instance, or what actions MB Financial took in support of the conspiracy. The bare assertion that MB agreed to join the conspiracy or ratified Novoselksy's conduct is not enough, especially for such a

complex and long-running conspiracy theory. *See, e.g.*, *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012) ("[U]nder *Iqbal* and *Twombly*, the required level of factual specificity rises with the complexity of the claim.") (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011)) (cleaned up).

The closest Klein comes to a well-pleaded factual allegation in support of the alleged connection between MB Financial and Novoselsky's conspiratorial conduct is the allegation that MB "allow[ed]" Novoselsky to file a petition for leave to appeal to the Illinois Supreme Court in September 2013. *See* Am. Compl. ¶¶ 130, 146. But even that allegation is conclusory: Klein does not explain what he means by saying that MB Financial "allowed" Novoselsky to file the petition. What's more, the allegation that MB Financial supported the 2013 petition for leave to appeal is still not enough to plausibly tie MB Financial to the vast conspiracy against Klein. Indeed, it is not even clear that MB Financial's alleged approval of the petition could give rise to *any* claim against MB Financial or Novoselsky. Although Klein does not make this explicit, he is apparently referring to the attempt to appeal the Illinois Supreme Court's decision invalidating the 2010 settlement (which Klein opposed and wanted to invalidate). *See* Am. Compl. ¶¶ 130, 146; *Cushing II*, 991 N.E.2d at 90-93 (invalidating the 2010 settlement); MB Financial Br. Exh. G, Denial of Petition for Leave to Appeal (denying leave to appeal the decision in *Cushing II*). The Illinois Supreme Court denied the petition and left the appellate court decision invalidating

the settlement intact, so the filing of the petition, on its own, did not harm Klein's interests at all.

### 3. Tortious Inducement of Breach of Fiduciary Duty and Conspiracy (Counts 3 and 4)

Klein also alleges that Novoselsky induced MB Financial to breach its fiduciary duty to Klein and that MB Financial is responsible for the actions of the supposed conspiracy against Klein. Am. Compl. ¶¶ 150-168. As discussed above, the factual allegations in the Amended Complaint are not enough to plausibly link Novoselsky to MB Financial, or MB Financial to the conspiracy writ large. So Counts 3 and 4 also fail to state a claim.

### E. Claims against Greyhound and Novoselsky

### 1. Spoilation of Evidence and Unjust Enrichment (Counts 6 and 8)

Klein's next set of allegations arise out of a slightly different set of facts than the rest of his claims. Klein alleges that his stepdaughter Cristina stole letters between Klein and Claudia "expressing love and affection and also various promises potentially sounding in a living will." Am. Compl. ¶ 195. Klein believes that this evidence would have helped him secure a larger recovery in the wrongful death litigation. *Id*. Klein further alleges that Cristina and her grandparents falsely claimed that Claudia would have divorced Klein, a claim that Klein was impaired from refuting by the loss of the letters. *Id*. ¶ 207. But this series of events does not state a claim against Greyhound or Novoselsky. The only accusations linking Greyhound or Novoselsky to Cristina's theft are vague and conclusory. All Klein says

is that "Greyhound controlled that Novoselsky induced Cristina [and her grandparents] to control or conceal those documents," and that Greyhound and Novoselsky "tortiously induc[ed] Cristina to breach her duty." *Id.* ¶¶ 193, 202, 208. Here again, Klein simply states the legal conclusion that Greyhound, Novoselsky, and Cristina conspired together, omitting the supporting factual matter that would render the legal conclusion plausible.

As for the unjust enrichment claim, there is simply no reason to think that Greyhound, the alleged third-party beneficiary of Cristina's wrongdoing, is liable to Klein under Illinois law. To state a claim of unjust enrichment, a plaintiff must allege (and eventually prove) that the defendant "retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989). When—as is the case here—the benefit was transferred to the defendant by a third party, the plaintiff has a claim for unjust enrichment only when (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant. *Id.* Greyhound did not obtain the benefit by mistake, and, as already discussed, Greyhound's alleged "inducement" of the theft is not plausible. Nor is there enough to say, on these sparse allegations, that Klein has a superior claim to the benefit. What's more, even if the elements of unjust enrichment were present, the

claim would still fail: the harm to Klein is allegedly lost recovery in the two settlement agreements; but the 2010 settlement was vacated by the Illinois court, and Klein's claims related to the 2016 settlement are barred by claim preclusion (Novoselsky is not a party to the unjust enrichment claim). Counts 6 and 8 are dismissed for failure to state a claim.[18]

## 2. Defamation Against Novoselsky: Count 10

Next is Klein's defamation claim against Novoselsky. Klein alleges that "[o]n September 8th, 2013 and then February 2014 and February 2015 up to present," Novoselsky defamed Klein by making statements to the Chicago Tribune and to "others in the legal community and large public" that Klein had fabricated emails allegedly proving Novoselsky's corruption of Judges Maddux, Locallo, and Haddad. Am. Compl. ¶ 230. The defamation allegations against Novoselsky fail to state a claim upon which relief may be granted.

The first alleged instance of defamation was "September 8, 2013." That is a reference to a Chicago Tribune Article dated September 8, 2013, which Klein attached as an exhibit to his original complaint (and purportedly incorporated by reference into this complaint, Am. Compl. ¶ 16). *See* Orig. Compl. Exh. 2, "Justice for Cristina"

---

[18]It is also likely that the statute of limitations has run on these claims. Klein alleges that Cristina and Greyhound "used the destruction of Klein's documents in their own advantage" during the 2010 settlement negotiations. Am. Compl. ¶ 192. So it seems clear that the theft must have occurred before 2010, and that Klein knew about it in 2010. But Klein also alleges that he learned from Cristina in December 2013 that the letters had been taken to Romania. *Id.* ¶ 196. It is unclear whether that allegation means that he did not learn about the theft until 2013, or that he simply learned in 2013 that the location of the stolen letters had changed. Because of that ambiguity, it is not clear whether the statute of limitations has expired for those claims.

Article. The problem is that the article does not report any statement by Novoselsky accusing Klein of fabricating the emails. Indeed, Novoselsky carefully avoids making that accusation, stating only that he "never wrote the emails attributed to him." *Id.* Although the Tribune reported that Novoselsky had accused Klein *in court papers* of fabricating the emails, Novoselsky's statements in court papers are protected by Illinois's absolute litigation privilege, which protects attorneys' statements in litigation so long as they have "some relation to the proceeding." *Stein v. Krislov*, 999 N.E.2d 345, 356 (Ill. App. Ct. 2013) (quoting Restatement (Second) of Torts § 586 (1977)). Novoselsky also stated to the Tribune that the accusations of collusion with judges were "not true," and said that Klein and Cristina's statements that he wrote the emails were "false," but he never went so far as to accuse Klein of fabricating the emails. Defamation requires a false statement of fact about the plaintiff. *Green v. Rogers*, 917 N.E.2d 450, 491 (Ill. 2009); *Perfect Choice Exteriors, LLC v. Better Business Bureau of Central Ill., Inc.*, 99 N.E.3d 541, 547 (Ill. App. Ct. 2018). But the 2013 Tribune articles do not report Novoselsky making the false statement Klein asserts that he made (that is, that Klein fabricated the emails). And, because Klein specifically singled out the September 8, 2013 Tribune article and attached it to his complaint, it is fair to hold Klein to the material in that article. So Klein's defamation claim based on the 2013 article fails to state a claim.

As for the reference to false statements in February 2015, Klein does not explain at all what statements those were (except that they related to the alleged fabrication of the emails), to whom they were made, or in what context. It is possible

that Klein is referring to a 2015 Chicago Tribune article reporting on Novoselsky's disciplinary proceedings before the Illinois Attorney Registration and Disciplinary Commission, but that article does not report any accusations made by Novoselsky against Klein, and in fact does not mention Klein's emails at all. *See* Cynthia Dizikes and Todd Lighty, "Lawyer accused of misconduct in case of girl who saw mother run over by bus," Chicago Tribune Feb. 20, 2015, available at http://www.chicagotribune.com/news/local/breaking/ct-novoselsky-ardc-complaint-met-20150220-story.html (last accessed Aug. 13, 2018).[19]

Finally, the reference to statements in February 2014 is even less clear. There does not appear to have been Chicago Tribune coverage of the case during that month, so it is again unclear what statements Novoselsky allegedly made, to whom, and in what context. All that Klein says is that Novoselsky made false statements regarding the fabricated emails "to the national newspaper Chicago Tribune and to others in the legal community and large public." Am. Compl. ¶ 230. That is not enough to put Novoselsky on notice of what statements Klein is complaining of and why, and so fails to state a plausible defamation claim.[20]

---

[19]This article was not attached to Klein's Amended Complaint. The Court uncovered the article in an independent search while trying to make sense of Klein's allegations.

[20]In his response brief, Klein states that "Novoselsky summoned the probate judge Riley as a witness and his sister Mrs. Riley to appear as a witness in the early 2014, to the investigation opened by Attorney Registration and Disciplinary Commission (ARDC) exposing him purposely to fraudulent information that Klein hacked and fabricated Novoselsky's emails." Pl. Resp. at 11. But plaintiffs are not permitted to amend their complaints through their response briefs. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). And even if the Court were to accept the new allegation in the response brief as an amendment to the complaint, Klein would still have failed to state a claim: it is simply not clear at all what Klein is alleging to have happened with Judge Riley and Mrs. Riley, and what he means when he says that Novoselsky "expos[ed] Judge Riley" to fraudulent information about the emails. *See id.*

### 3. Intentional Interference with Expectancy of Recovery (Count 12)

Klein's next theory is that Novoselsky and Greyhound interfered with his expectancy of recovery. That claim is entirely based on the theory that the Greyhound/Novoselsky conspiracy deprived Klein of his chance to recover damages in the separate Colorado case. Am. Compl. ¶¶ 245-262. As discussed above, Klein already litigated the issue of his entitlement to bring a separate case and lost. Count 12 is barred by issue preclusion.

### 4. Respondeat Superior Against Greyhound: Count 18

The penultimate claim is for respondeat superior against Greyhound, based on the actions of its agents Paul Bozych and Brian Schroeder. These claims also fail to state a claim. Klein entirely fails to identify what tortious acts Schroeder allegedly carried out in his capacity as Greyhound's agent. *See* Am. Compl. ¶¶ 332-334. The factual allegations about Schroeder's participation in the litigation are minimal, so it is not clear what Klein's theory of liability is as to Schroeder. *See* Am. Compl. ¶¶ 39, 42-44; *see also* Orig. Compl. Exh. 7 ¶¶ 1, 16, 18-23, 53, 55. Most of the allegations appear to be accusing Schroeder of general participation in the conspiracy or of doing legal work on Greyhound's behalf. Klein might have tried to tie these into some discernable theory of tort liability in his response brief, but he did not. *See* Pl. Resp. at 12 (accusing Schroeder of being "secretively Greyhound agent executing a plan," but not otherwise mentioning Schroeder). Without even a rudimentary explanation

---

It is also possible that Klein might be referring to a hearing on the ethics claims brought against Novoselsky by Stevens and Cushing, which took place in February 2014. *See* Orig. Compl. Exh. 5, 04/08/14 Order, Case No. 09 L 6397, at 16. But it is not clear what, if anything, Novoselsky said about Klein's emails at this hearing.

of how Schroeder's actions supposedly give rise to liability, the claim based on Schroeder's actions must be dismissed.

Klein is more explicit about his theory of liability when it comes to Bozych. He alleges that Bozych participated in the supposed conspiracy to deprive Klein of his civil rights in violation of 42 U.S.C. § 1985(3). Am. Compl. ¶ 334. As already discussed, Klein's Section 1985(3) claim is not plausible, so the respondeat superior claim based on Bozych's conduct is dismissed as well.

### 5. Civil Conspiracy (Count 4)

Last up is Klein's claim against Greyhound and Novoselsky for civil conspiracy. Civil conspiracy is not an independent tort. *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000). If a plaintiff fails to state an independent cause of action underlying the conspiracy allegations, the conspiracy claim also fails. *Id*. As explained above, Klein has failed to state any independent tort claims against Greyhound or Novoselsky. His civil conspiracy claim is therefore dismissed as well.

### IV. Conclusion

For the reasons explained above, the Amended Complaint is dismissed with prejudice. Ordinarily, the Court might consider allowing an opportunity to amend at least some of the claims, especially when the plaintiff is representing himself. But Klein has already had a chance to amend, and was given extreme leeway with the structure of his Amended Complaint (which is a rambling 56 pages long, not counting the 200-odd pages of supporting material and factual allegations purportedly

incorporated by reference). Klein also filed a response brief that is 17 single-spaced pages long, with over 100 pages of appended exhibits. What's more, as the Seventh Circuit noted, Klein and his associates have spent sixteen years pursuing related claims in state and federal court, diverting scarce judicial resources from the needs of other litigants along the way. *Klein v. O'Brien*, 884 F.3d at 756, 757. Enough is enough.[21]

The status hearing of August 16, 2018 is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: August 13, 2018

---

[21]As discussed earlier, *see supra* n.10, all of Klein's motions filed during and after the briefing of the dismissal motions are denied. *E.g.*, R. 133. There is no reason to permit further amendments or supplementation of the complaints. Also, the filing of the certiorari petition by Xydakis in the other Northern District of Illinois case, R. 136, raises no substantial question for this case. So the motion [136] to take judicial notice of the filing is denied. Novoselsky's motion [131] to join is denied as unnecessary.